```
_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED
```

**APR 24 2019**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HYUNG IL KWON,<br><br>Defendant. | CASE NO. **CR19-083 RAJ**<br><br>INFORMATION |

The United States Attorney charges that:

## COUNT 1
### (Wire Fraud)

At all times relevant to this Information:

**A.  Introduction**

1.  TK Mac Enterprises, Inc. ("TK Mac") purchased and sold wholesale cigarette and non-cigarette tobacco products. TK Mac has been licensed with the Washington State Department of Revenue (WADOR) as a cigarette wholesaler since May 2002, and as a tobacco product distributor since September 2005. TK Mac had two retail locations, one in Federal Way, Washington ("TK Mac South"), and the other in Lynnwood, Washington ("TK Mac North").

2.  One Stop Shopping, Inc. ("One Stop") was established in 2015. Washington State Secretary of State records listed D.T. as the governing person holding

all offices of One Stop. One Stop had one retail location located in Lynnwood, Washington. One Stop sold tobacco products, cigarettes and general merchandise.

3. From 2001 through at least April 19, 2017, Tae Young Kim operated and managed TK Mac. Washington State Secretary of State records listed Tae Young Kim as the governing person holding all offices of TK Mac. Tae Young Kim shared in all business and financial decisions related to TK Mac and signed its corporate tax returns.

4. From no later than 2012 through April 19, 2017, HYUNG IL KWON operated as the true owner of TK Mac and One Stop. HYUNG IL KWON and Tae Young Kim oversaw the business and financial operations of TK Mac and One Stop.

5. Riverside Smoke Shop ("Riverside"), D&A Smoke Shop ("D&A") and Valley Smoke Shop ("Valley") are commonly owned smoke shops located on the Puyallup Indian Reservation (collectively "Tribal Smoke Shops").

**B.     Washington State Tobacco Tax Background**

6. Under Washington State law all non-cigarette tobacco products were classified as "tobacco products."

7. A "distributor" of tobacco products meant (a) any person engaged in the business of selling tobacco products in this state who brings, or causes to be brought, into this state from without the state any tobacco products for sale, (b) any person who makes, manufactures, fabricates, or stores tobacco products in this state for sale in this state, (c) any person engaged in the business of selling tobacco products without this state who ships or transports tobacco products to retailers in this state, to be sold by those retailers, (d) any person engaged in the business of selling tobacco products in this state who handles for sale any tobacco products that are within this state but upon which tax has not been imposed. RCW 82.26.010(8).

8. Tobacco products were taxed at various rates depending on the product.

9. Under Washington State law tobacco taxes were "levied and collected" upon the sale, handling, or distribution of all tobacco products. RCW 82.26.020(1).

The tobacco taxes "must be imposed at the time the distributor (a) brings, or causes to be brought, into this state from without the state tobacco products for sale, (b) makes, manufactures, fabricates, or stores tobacco products in this state for sale in this state, (c) ships or transports tobacco products to retailers in this state, to be sold by those retailers, or (d) handles for sale any tobacco products that are within this state but upon which tax has not been imposed." RCW 82.26.020(2).

10. Federally recognized Indian tribes and enrolled tribal members conducting business within the boundaries of an Indian reservation were exempt from state taxation for tobacco products under RCW 82.26.020. RCW 82.26.010(14).

11. If a tobacco distributor such as TK Mac sold tobacco products to a federally recognized Indian tribal smoke shop, the tobacco tax paid on the product could be claimed as a credit by the distributor on the next WADOR tax return filed.

12. State excise taxes were also collected from companies conducting wholesale transactions, including tobacco distributors, on gross receipts from wholesaling. "Wholesaling" is meant to report sales of tangible personal property and/or labor performed for persons who resell the same in the normal course of business.

C.   **Scheme and Artifice to Defraud**

13. Beginning no later than January 1, 2014, and continuing through April 19, 2017, at Federal Way, within the Western District of Washington, and elsewhere, Tae Young Kim and HYUNG IL KWON, A.P., T.S., and others known and unknown to the United States Attorney, knowingly devised a scheme and artifice to defraud the Washington State Department of Revenue (WADOR) and others, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, as further described below.

14. The essence of the scheme and artifice to defraud was that Tae Young Kim and HYUNG IL KWON caused TK Mac to purchase tobacco products from the Tribal Smoke Shops, located on the Puyallup Indian Reservation, and then caused the

submission of monthly Combined Excise Tax Returns (CETRs) to WADOR on behalf of TK Mac, which drastically and fraudulently understated the amount of chewing tobacco products purchased from the Tribal Smoke Ships, and which fraudulently claimed a tax credit for non-existent and sham tobacco product sales to the Tribal Smoke Shops, both of which caused WADOR to levy and collect far fewer taxes on TK Mac than those actually owed.

### D.     Manner and Means

#### *Tobacco Purchases and Sales*

15.     It was part of the scheme and artifice to defraud that, between January 2014 and April 19, 2017, Tae Young Kim and HYUNG IL KWON caused TK Mac to purchase tobacco products, including chewing tobacco, from the Tribal Smoke Shops, located on the Puyallup Indian Reservation, the majority of which purchases were made in cash, and a minority of which purchases were made by check.

16.     It was part of the scheme and artifice to defraud that the Tribal Smoke Shops provided two invoices to TK Mac each time TK Mac purchased tobacco products: one invoice for tobacco products purchased with cash, and a separate invoice for tobacco products purchased with check.

17.     It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON directed that the invoices be maintained separately at TK Mac. The purpose of the dual invoices and the separation of invoices was to facilitate the under-reporting scheme and to avoid detection of the fraud scheme in the event of an audit.

18.     It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON caused the tobacco purchased with cash not to be reported to the WADOR for assessment of tax.

19.     It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON caused TK Mac to sell tobacco products, including

1 chewing tobacco, from TK Mac to various retailers throughout the Puget Sound region, including One Stop. A significant portion of these sales were conducted in cash.

20. It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON purposefully avoided reporting TK Mac's cash receipts to WADOR and to the United States Internal Revenue Service for purposes of determining the true amount of tax owed.

21. It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON caused cash proceeds from the sale of tobacco product sales and other items to be stored in a safe at TK Mac's Federal Way location.

### *Fraudulent Cash-for-Check Swap*

22. It was further part of the scheme and artifice to defraud that Tae Young Kim, HYUNG IL KWON, A.P., T.S., and other individuals known and unknown to the U.S. Attorney, devised and executed an arrangement to deceive WADOR through a false tobacco product credit arrangement.

23. It was further part of the scheme and artifice to defraud that a TK Mac representative, at the direction of Tae Young Kim and HYUNG IL KWON, would transport cash generated by TK Mac and One Stop from the sale of untaxed tobacco products, among other things, to Riverside.

24. It was further part of the scheme and artifice to defraud that the Tribal Smoke Shops, acting through A.P., T.S., and other individuals known and unknown to the U.S. Attorney, provided checks in the same amount as the cash transported to Riverside. The checks were written on the accounts of D&A and Riverside and were signed by T.S.

25. It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON caused false invoices matching the check amounts to be delivered to Riverside or D&A showing the sale of tobacco products from TK Mac to Riverside or D&A; however, in fact, no tobacco products changed hands in the transaction.

26. It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON caused the checks received from Riverside and D&A to be deposited into TK Mac's bank account.

27. It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON claimed the check payments from Riverside and D&A represented sales of tobacco products to a federally recognized Indian tribal tobacco store with on-reservation delivery. Tae Young Kim and HYUNG IL KWON then fraudulently claimed these payments as "credits" on TK Mac's CETRs.

### *Submission of False CETRs and Payment of Tax*

28. It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON caused the submission of monthly CETRs to WADOR on behalf of TK Mac, which under-stated the amount of tobacco products purchased and claimed a fraudulent tax credit, thereby causing significantly less tax to be assessed than that actually owed.

29. It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON caused wire transfers from TK Mac's business bank account to DOR for the amount of taxes shown to be due based on the false CETRs, which wire transfers involved interstate wire transmissions to BBCN Bank servers.

30. It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON did not report cash receipts as wholesale receipts on TK Mac's CETRs.

31. As a result of the above-described scheme and artifice to defraud, Tae Young Kim and HYUNG IL KWON caused TK Mac to avoid the payment of approximately $10 million in excise tax due to the State of Washington between January 1, 2014 and April 17, 2017.

E. **Execution of the Scheme and Artifice to Defraud**

32. As a representative example of the scheme and artifice to defraud, on or about April 28, 2015, at Federal Way, within the Western District of Washington, and elsewhere, Tae Young Kim and HYUNG IL KWON, having devised a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme or artifice: namely a wire transfer of $48,405.37 from TK Mac's Company's BBCN Bank Account No. xxxx-0995 to the Washington State Department of Revenue (DOR) bank account, which wire transfer involved a wire transmission from Washington to another State.

All in violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT 2
### (Attempt to Evade or Defeat Tax, 26 U.S.C. § 7201)

33. The United States re-alleges and incorporates by reference paragraphs 1-32 as if fully set forth herein.

34. During the calendar year 2015, HYUNG IL KWON, a resident of the Western District of Washington, received taxable income in the sum of $1,867,606.19, upon which there was income tax due and owing to the United States of America of $710,035.00. Knowing the foregoing facts and failing to make an income tax return on or before April 15, 2016, as required by law, to any proper officer of the Internal Revenue Service, and to pay the income tax to the Internal Revenue Service, HYUNG IL KWON, from on or about January 1, 2014 through on or about April 15, 2016, in the Western District of Washington, willfully attempted to evade and defeat income tax due and owing by him to the United States of America, for the calendar year 2015, by committing the following affirmative acts, among others:

    a. As described above in paragraph 20, HYUNG IL KWON caused TK Mac to under-report its gross receipts to WADOR and the Internal Revenue Service.

b. HYUNG IL KWON caused employees of TK Mac to deposit very small amounts of cash in TK Mac's bank account, rather he caused those employees to store cash in the safe located at the business premises in Federal Way, Washington. HYUNG IL KWON then removed cash from the TK Mac safe on a regular basis for his personal use and benefit, among other reasons.

c. HYUNG IL KWON caused TK Mac to maintain two sets of records for TK Mac's financial transactions: one set which recorded all transactions, including cash transactions, and a second set, based on the company's bank accounts, which recorded very few cash transactions.

d. HYUNG IL KWON placed his business assets, real property, and personal property in the names of nominees.

e. HYUNG IL KWON caused nominee entities to pay gambling debts and other debts he had incurred.

All in violation of Title 26, United States Code, Section 7201.

DATED this 24th day of April, 2019.

_____
BRIAN T. MORAN
United States Attorney

_____
ANDREW FRIEDMAN
Assistant United States Attorney

_____
MATTHEW D. DIGGS
Assistant United States Attorney