FILED ENTERED
LODGED RECEIVED

MAY 22 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

The Honorable James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>HYUNG IL KWON,<br>Defendant. | NO. CR19-083JLR<br><br>**PLEA AGREEMENT** |

The United States of America, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and Matthew Diggs, Assistant United States Attorney for said District, HYUNG IL KWON, and his attorney, Mark Bartlett, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

1. **Waiver of Indictment.** Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter pleas of guilty to the charges brought by the United States Attorney in an Information.

2. **The Charges.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter pleas of guilty to the following charges contained in the Information.

a. Wire Fraud, as charged in Count 1, in violation of Title 18, United States Code, Section 1343.

b. Attempt to Evade or Defeat Tax, as charged in Count 2, in violation of Title 26, United States Code, Section 7201.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering his guilty pleas, he will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

3. **Elements of the Offenses**. The elements of the offenses to which Defendant is pleading guilty are as follows:

a. The elements of Wire Fraud, as charged in Count 1, in violation of Title 18, United States Code, Section 1343, are as follows:

First, the defendant made up a scheme or plan to defraud or for obtaining money or property by making false promises, statements or representations;

Second, the defendant knew the statements or promises were false;

Third, the statements or promises were material, that is they would reasonably influence a person to part with money or property;

Fourth, the defendant acted with the intent to defraud, that is the intent to deceive or cheat; and,

Fifth, the defendant used or caused to be used, interstate wire communications to carry out or attempt to carry out an essential part of the scheme.

b. The elements of Attempting to Evade or Defeat Tax, as charged in Count 2, in violation of Title 26, United States Code, Section 7201, are as follows:

First, the defendant committed an affirmative act to evade or defeat the assessment of a tax;

Second, tax was due and owing;

Third, the defendant acted willfully.

4. **The Penalties**. Defendant understands that the statutory penalties applicable to the offenses to which he is pleading guilty are as follows:

a. For the offense of Wire Fraud, as charged in Count 1: A maximum term of imprisonment of twenty (20) years, a fine of up to two hundred and fifty thousand dollars ($250,000.00), or twice the gross gain or gross loss from the offense, a period of



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

supervision following release from prison of up to three (3) years, and a mandatory special assessment of one hundred dollars ($100.00).

b. For the offense of Attempting to Evade or Defeat Tax, as charged in Count 2: A maximum term of imprisonment of five (5) years, a fine of up to two hundred and fifty thousand dollars ($250,000.00), or twice the gross gain or gross loss from the offense, a period of supervision following release from prison of up to three (3) years, and a mandatory special assessment of one hundred dollars ($100.00).

If a probationary sentence is imposed, the probation period can be up to five (5) years. Defendant agrees that the special assessment shall be paid at or before the time of sentencing.

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictive conditions and requirements. Defendant further understands that if supervised release is imposed and he violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant's serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, he knowingly and voluntarily waives the following rights:

a. The right to plead not guilty and to persist in pleas of not guilty;

b. The right to a speedy and public trial before a jury of his peers;



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for him;

d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

e. The right to confront and cross-examine witnesses against Defendant at trial;

f. The right to compel or subpoena witnesses to appear on his behalf at trial;

g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h. The right to appeal a finding of guilt or any pretrial rulings.

6. **Ultimate Sentence**. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

7. **Restitution.** Defendant shall make restitution to Washington State Department of Revenue in the amount of ten million, one hundred seventeen thousand, eight hundred and eighty-one dollars and ninety-two cents ($10,117,881.92), less any amount paid to the Department of Revenue at or before sentencing for the unpaid tobacco taxes within the scope of this Plea Agreement, including but not limited to any funds transferred to Department of Revenue pursuant to order of the court in the related civil seizure proceeding, MC17-174JPD. This restitution obligation to the Department of Revenue will be joint and several with Tae Young Kim, the defendant in *United States v. Tae Young Kim*, CR19-004JLR.

Defendant shall make restitution to the Internal Revenue Service in an amount of eight hundred fifty thousand, nine hundred and ninety-four dollars ($850,994), pursuant to 18 U.S.C. § 3663(a)(3). Defendant understands and agrees that this figure does not include interest under 26 U.S.C. § 6601, which will be assessed by the IRS pursuant to



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Title 26. Defendant agrees that the total amount of restitution reflected in this agreement results from defendant's fraudulent conduct.

Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, Defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). Defendant does not have the right to challenge the amount of this restitution-based assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor Defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.

Defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. Defendant understands and agrees that the plea agreement does not resolve the Defendant's civil tax liabilities, that the IRS may seek additional taxes, interest and penalties from Defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise Defendant's obligation to pay any remaining civil tax liability. Defendant authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments. Defendant understands that he is not entitled to credit with the IRS for any payment until the payment is received by the IRS.

8. **Fraud Loss Amount.** For purposes of determining the appropriate sentence, the parties agree that the loss amount related to the wire fraud scheme charged in Count One is ten million, one hundred seventeen thousand, eight hundred and eighty-one dollars and ninety-two cents ($10,117,881.92).



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

9. **Tax Loss.** The United States and Defendant stipulate and agree that the correct amount of federal tax loss for purposes of sentencing is eight hundred fifty thousand, nine hundred and ninety-four dollars ($850,994). This amount includes as relevant conduct, unpaid federal income taxes of HYUNG IL KWON for the tax years of 2014 and 2015. Defendant understands that this Plea Agreement does not preclude the Internal Revenue Service from assessing and determining any additional civil tax, penalties, and/or interest that may be owed by Defendant.

10. **Statement of Facts**. The parties agree on the following facts. Defendant admits he is guilty of the charged offenses:

**A. Introduction**

a. TK Mac Enterprises, Inc. ("TK Mac") purchased and sold wholesale cigarette and non-cigarette tobacco products. TK Mac has been licensed with the Washington State Department of Revenue (WADOR) as a tobacco product distributor since September 2005. TK Mac had two retail locations, one in Federal Way, Washington ("TK Mac South"), and the other in Lynnwood, Washington ("TK Mac North").

b. One Stop Shopping ("One Stop") was established in 2015. Washington State Secretary of State records listed D.T. as the governing person holding all offices of the corporation. One Stop had one retail location located in Lynnwood, Washington. One Stop sold tobacco products, cigarettes and general merchandise.

c. From 2001 through at least April 19, 2017, Tae Young Kim operated and managed TK Mac. Washington State Secretary of State records listed Tae Young Kim as the governing person holding all offices of TK Mac. Tae Young Kim shared in all business and financial decisions related to TK Mac and signed its corporate tax returns.

d. From no later than 2012 through April 19, 2017, HYUNG IL KWON operated as the true owner of TK Mac and One Stop. HYUNG IL KWON and Tae Young Kim oversaw the business and financial operations of TK Mac and One Stop.

e. Riverside Smoke Shop ("Riverside"), D & A Smoke Shop ("D&A") and Valley Smoke Shop ("Valley") are commonly owned smoke shops located on the Puyallup Indian Reservation (collectively "Tribal Smoke Shops"). At all relevant times, A.P. controlled the Tribal Smoke Shops. At all relevant times, T.S. was the manager of Riverside.

**B. Wire Fraud Scheme**

f. Beginning no later than January 2014, and continuing through April



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2017 at Federal Way, within the Western District of Washington, and elsewhere, Tae Young Kim, HYUNG IL KWON, A.P., T.S., and others, knowingly devised a scheme and artifice to defraud the Washington State Department of Revenue (WADOR) and others, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, as further described below.

g. The essence of the scheme and artifice to defraud was that Tae Young Kim and HYUNG IL KWON caused TK Mac to purchase chewing tobacco from the Tribal Smoke Shops, located on the Puyallup Indian Reservation, and then caused the submission of monthly Combined Excise Tax Returns (CETRs) to the Washington State Department of Revenue (WADOR) on behalf of TK Mac, which drastically and fraudulently understated the amount of chewing tobacco purchased from the Tribal Smoke Ships, and which fraudulently claimed a tax credit for non-existent and sham tobacco sales to Tribal Smoke Shops, both of which caused WADOR to levy and collect far fewer tobacco excise taxes on TK Mac than those actually owed.

**1. Tobacco Purchases and Sales**

h. It was part of the scheme and artifice to defraud that, between January 2014 and April 19, 2017, Tae Young Kim and HYUNG IL KWON caused TK Mac to purchase tobacco products, including chewing tobacco, from the Tribal Smoke Shops, located on the Puyallup Indian Reservation, the majority of which purchases were made in cash, and a minority of which purchases were made by check.

i. The Tribal Smoke Shops and TK Mac maintained a record of the check and cash purchases. The Tribal Smoke Shops provided separate invoices for the tobacco purchased in cash and that purchased by check. HYUNG IL KWON and Tae Young Kim caused invoices for tobacco purchased with check to be maintained separately at TK Mac from those showing tobacco purchased in cash. The purpose of the dual invoices and this separation of invoices was to avoid detection of the fraud scheme in the event of an audit.

j. It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON caused the tobacco purchased with cash not to be reported to the WADOR for assessment of tax.

k. It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON caused TK Mac to sell tobacco products, including chewing tobacco, from TK Mac to various retailers throughout the Puget Sound region, including One Stop. A significant portion of these sales were conducted in cash.

l. It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON purposefully avoided depositing cash receipts, including those from the sale of untaxed tobacco products, in TK Mac bank accounts and the reporting of TK Mac's cash receipts to WADOR for purposes of determining the tax owed.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

m. Tae Young Kim and HYUNG IL KWON caused cash proceeds from tobacco sales to be stored in a safe at TK Mac's Federal Way location, from which they were removed primarily by HYUNG IL KWON. Tae Young Kim and HYUNG IL KWON did not report all of TK Mac's cash receipts as wholesale receipts on TK Mac's Combined Excise Tax Returns.

**2. Fraudulent Cash-for-Check Swap**

n. It was further part of the scheme and artifice to defraud that Tae Young Kim, HYUNG IL KWON, A.P., T.S., and others known and unknown, devised and executed an arrangement whereby TK Mac would transport cash generated by TK Mac and One Stop from the sale of inventory, including but not limited to tobacco products on which the required taxes had not been paid, to Riverside Smoke Shop.

o. It was further part of the scheme and artifice to defraud that TK Mac would receive a check from Riverside or D&A in the same amount as the cash transported. Tae Young Kim created invoices showing the purported sale of tobacco products to the Tribal Smoke Shops. The invoices matched amounts on the checks provided to TK Mac. However, as HYUNG IL KWON knew, the invoices were bogus; no tobacco changed hands in the transaction. The purpose of the false invoices was to substantiate the sham transactions in the event of an audit of TK Mac or the Tribal Smoke Shops.

p. Tae Young Kim and HYUNG IL KWON caused the checks received from Riverside and D&A to be deposited into TK Mac's bank account.

q. It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON fraudulently claimed the check payments from Riverside and D&A represented sales of tobacco to a federally recognized Indian tribal tobacco stores with on-reservation delivery. TAE YOUNG KIM and HYUNG IL KWON then claimed these payments as "credits" on TK Mac's CETRs.

**3. Submission of False CETRs and Payment of Tax**

o. It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON caused the submission of monthly CETRs to DOR on behalf of TK Mac, which understated the amount of tobacco products purchased and claimed a fraudulent tax credit, thereby causing significantly fewer taxes to be assessed than those actually owed.

p. It was further part of the scheme and artifice to defraud that Tae Young Kim and HYUNG IL KWON caused wire transfers to be made from TK Mac's business bank account to WADOR for the amount of taxes shown to be due based on the false CETRs, which wire transfers involved interstate wire transmissions to BBCN Bank servers.

q. As a result of the above-described scheme and artifice to defraud,



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Tae Young Kim and HYUNG IL KWON caused TK Mac to avoid the payment of at approximately 10 million dollars in excise taxes owed to the State of Washington between January 1, 2014 and April 19, 2017.

**4. Execution of the Scheme and Artifice to Defraud**

r. As a representative execution of the scheme, on or about April 28, 2015, at Federal Way, within the Western District of Washington, and elsewhere, Tae Young Kim and HYUNG IL KWON, having devised a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme or artifice: namely, a wire transfer of $48,405.37 from TK Mac's Company's BBCN Bank Account No. xxxx-0995 to the Washington State Department of Revenue (DOR) bank account, which wire transfer involved a wire transmission from Washington to another State.

**C. HYUNG IL KWON Personal Tax Evasion**

t. Defendant HYUNG IL KWON has not filed a federal income tax return since, at least, 2006.

u. During tax year 2014 HYUNG IL KWON received taxable income from TK Mac in the sum of at least $423,189, upon which there was income tax due and owing to the United States of America of $140,959, and during tax year 2015, HYUNG IL KWON received taxable income from TK Mac in the sum of at least $1,867,606, upon which there was income tax due and owing to the United States of $710,035, for a total cumulative tax due and owing to the United States of America of $850,994 for tax years 2014 and 2015.

v. Between January 1, 2013 and April 15, 2016, HYUNG IL KWON willfully made affirmative attempts to evade and defeat the assessment of federal income tax due and owing by him to the United States for calendar year 2015, including but not limited to the following actions: (1) concealing bank accounts, real estate, personal property, and businesses, owned and controlled by HYUNG IL KWON in the names of other people; (2) arranging to receive income from TK Mac in cash; (3) arranging for the payment of HYUNG IL KWON's debts by nominees.

11. **United States Sentencing Guidelines**. Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offenses; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

a. The Court will determine applicable Defendant's Sentencing Guidelines range at the time of sentencing;

b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d. Defendant may not withdraw his guilty pleas solely because of the sentence imposed by the Court.

12. **Acceptance of Responsibility.** At sentencing, if the district court concludes Defendant qualifies for a downward adjustment acceptance for acceptance of responsibility pursuant to USSG § 3E1.1(a) and the defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the district court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of his intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

13. **Sentencing Factors**. The parties agree that the following Sentencing Guidelines provisions apply to this case:

a. The parties agree that Count One (Wire Fraud) and Count Two (Tax Evasion) should be grouped for purposes of the Guidelines, pursuant to USSG § 3D1.2. Count One (Wire Fraud) produces the highest offense level, therefore, the parties agree that guideline 2B1.1 applies to the grouped counts. *See* USSG § 3D1.3.

b. The parties agree that the base offense level for wire fraud is 7 pursuant to USSG § 2B1.1(a)(1).

c. The parties agree that the base offense level should be increased by 20 levels for a loss amount greater than nine million, five hundred thousand dollars ($9,500,000), but less than twenty-five million dollars ($25,000,000), pursuant to USSG § 2B1.1(b)(1)(K).

d. The parties agree that the base offense level should be increased by 2 levels because the conduct involved sophisticated means, pursuant to USSG § 2B1.1(b)(10)(c).

e. The parties agree that the defendant's offense level should be increased by four levels because the defendant was the organizer of criminal activity involving five or more participants and that was otherwise extensive, pursuant to USSG § 3B1.1(a).

**Acceptance of Responsibility**

f. The parties agree that the defendant's offense level should be decreased by three levels, pursuant to USSG § 3E1.1, as further described in paragraph 12.

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

14. **Non-Prosecution of Additional Offenses**. As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

15. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Indictment that were previously dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release, (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the plea agreement.

16. **Waiver of Appeal**. Defendant acknowledges that by entering the guilty pleas required by this plea agreement, Defendant waives all rights to appeal from Defendant's conviction and any pretrial rulings of the court. Defendant further agrees that, provided the court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the court at the time of sentencing, Defendant waives to the full extent of the law:

a. Any right conferred by Title 18, United States Code, Section 3742 to appeal the sentence, including any restitution order imposed; and

b. Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

This waiver, however, does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of his confinement or the decisions of the Bureau of Prisons regarding the execution of his sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

17. **Voluntariness of Pleas**. Defendant agrees that he has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter his pleas of guilty.

18. **Statute of Limitations**. In the event this Agreement is not accepted by the



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

19. **Completeness of Agreement**. The United States and Defendant acknowledge that, except as to certain matters set forth during the plea colloquy in open court, these terms constitute the entire Plea Agreement between the parties. This Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 16 day of May, 2019.

HYUNG IL KWON
Defendant

MARK BARTLETT
Attorney for Defendant

MATTHEW DIGGS
Assistant United States Attorney



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970